UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIE A. BROWN,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CORE-MARK INTERNATIONAL, INC.,<br><br>　　　　　Defendant. | Case No. 18-cv-07451-JCS<br><br>**ORDER REGARDING MOTION TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS**<br><br>Re: Dkt. No. 28 |

**I.　INTRODUCTION**

In this putative class action, Plaintiff Willie Brown brings two claims under the Fair Credit Reporting Act ("FCRA") against his former employer, Defendant Core-Mark International, Inc. ("Core-Mark"). Core-Mark moves to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction on the basis that Brown lacks standing under Article III of the U.S. Constitution, and for judgment on the pleadings under Rule 12(c) on the basis that Core-Mark's disclosure and Brown's authorization for Core-Mark to obtain consumer reports satisfy the FCRA's requirement of clarity. The Court held a hearing on May 3, 2019. For the reasons discussed below, Core-Mark's motion is GRANTED IN PART, and Brown's complaint is DISMISSED with leave to amend. If Brown can cure the deficiencies identified herein, he may file a second amended complaint no later than May 24, 2019.[1]

**II.　BACKGROUND**

Brown alleges that when he applied and was hired for a job with Core-Mark, he was confused by a disclosure form purporting to indicate that Core-Mark could obtain consumer reports related to Brown, and that he therefore "did not give valid authorization for [Core-Mark] to

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

procure a consumer report." 1st Am. Compl. ("FAC," dkt. 21) ¶¶ 3, 10, 17, 25, 26, 32. He alleges that Core-Mark nevertheless subsequently obtained such a report. *Id.* ¶¶ 17, 33. Seeking to represent a class of similarly situated employees and applicants, Brown brings claims under 15 U.S.C. § 1681b(b)(2)(A)(i), for failure to provide proper disclosure that a consumer report may be obtained, FAC ¶¶ 52–62, and under 15 U.S.C. § 1681b(b)(2)(A)(ii), for failure to obtain proper authorization to obtain such a report, FAC ¶¶ 63–68. Brown contends that Core-Mark's purported violations were willful and that he and the putative class are therefore entitled to statutory damages under 15 U.S.C. § 1681n. FAC ¶¶ 59–60, 65–66.[2]

The disclosure form that Brown signed reads as follows:

> <u>DISCLOSURE REGARDING BACKGROUND INVESTIGATION</u>
>
> **Employer** ("the Company") may obtain information about you from a third party consumer reporting agency for employment purposes. Thus, you may be the subject of a "consumer report" and/or an "investigative consumer report" which may include information about your character, general reputation, personal characteristics, and/or mode of living, and which can involve personal interviews with sources such as your neighbors, friends, or associates. These reports may contain information regarding your credit history, criminal history, social security verification, motor vehicle records ("driving records"), verification of your education or employment history, or other background checks. Credit history will only be requested where such information is substantially related to the duties and responsibilities of the position for which you are applying.
>
> You have the right, upon written request made within a reasonable time, to request whether a consumer report has been run about you, and disclosure of the nature and scope of any investigative consumer report and to request a copy of your report. Please be advised that the nature and scope of the most common form of investigative consumer report is an employment history or verification. These searches will be conducted by USAFact, Inc., 6240 Box Springs Blvd Riverside, CA 92507, 800-547-0263, www.usafact.com. **The scope of this disclosure is all-encompassing, however, allowing the Company to obtain from any outside organization all manner of consumer reports throughout the course of your employment to the extent permitted by law.**

FAC Ex. 1 (final bold emphasis added). The last sentence, emphasized in bold above, is the focus of Brown's complaint and the parties' arguments on the present motion. Brown contends that it is

---

[2] Core-Mark's present motion challenges whether Brown has alleged a violation, but does not address whether Brown sufficiently alleges willfulness.

2

functionally identical to a disclosure held to be unclear in *Gilberg v. California Check Cashing Stores, LLC*, 913 F.3d 1169 (9th Cir. 2019). FAC ¶ 7; Opp'n (dkt. 27) at 1, 7. As explained by Brown's counsel at the hearing, this theory is based primarily on the disclosure's use of the word "however."

Brown also attaches to his complaint two other documents that he signed: an "Application for Employment" authorizing Core-Mark "to make any investigation of [his] personal history and financial and credit records through any investigative or credit agencies or bureaus of [its] choice" and releasing Core-Mark from liability for such investigations, FAC Ex. 2; and an "Acknowledgment and Authorization for Background Check" acknowledging receipt of the disclosure reproduced above, certifying that Brown read and understood the disclosure, and authorizing Core-Mark to obtain consumer reports, FAC Ex. 3.

Core-Mark moves for judgment on the pleadings under Rule 12(c) on the basis that the disclosure is clear on its face. Mot. (dkt. 28) at 7–12. Core-Mark distinguishes *Gilberg* on the basis that the sentence at issue in that case was grammatically incorrect, while the sentence at issue here—otherwise substantially identical—corrects that error by using a comma instead of a semicolon. *Id.* at 11. Core-Mark also moves to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), arguing that Brown lacks Article III standing to bring a claim because Core-Mark's disclosure form did not violate the FCRA. *Id.* at 12–17. Finally, Core-Mark briefly moves in the alternative to dismiss for failure to state a claim under Rule 12(b)(6), based on the same arguments. *Id.* at 17. Brown argues that the case should go forward because the disclosure form did not meaningfully differ from the form at issue in *Gilberg*, and because he should be allowed to present evidence as to how a reasonable person would understand its language. *See generally* Opp'n.

**III. ANALYSIS**

    **A. Motion to Dismiss Under Rule 12(b)(1)**

        **1. Legal Standard**

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a district court must dismiss an action if it lacks jurisdiction over the subject matter of the suit. *See* Fed. R. Civ. P.

3

12(b)(1). "Subject matter jurisdiction can never be forfeited or waived and federal courts have a continuing independent obligation to determine whether subject-matter jurisdiction exists." *Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969, 975 n.12 (9th Cir. 2012) (internal quotation marks and citations omitted). On a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), it is the plaintiff's burden to establish the existence of subject matter jurisdiction. *Kingman Reef Atoll Invs., LLC v. United States*, 541 F.3d 1189, 1197 (9th Cir. 2008).

A party challenging the court's subject matter jurisdiction under Rule 12(b)(1) may bring a facial challenge or a factual challenge. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In evaluating a facial challenge to subject matter jurisdiction, the court accepts the factual allegations in the complaint as true. *See Miranda v. Reno*, 238 F.3d 1156, 1157 n.1 (9th Cir. 2001). Where a defendant brings a factual challenge, on the other hand, "a court may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment." *White*, 227 F.3d at 1242 (citation omitted). Once the moving party has made a factual challenge by offering affidavits or other evidence to dispute the allegations in the complaint, the party opposing the motion must "present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *Colwell v. Dep't of Health & Human Servs.*, 558 F.3d 1112, 1121 (9th Cir. 2009) (quoting *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989)).

### 2. Brown's Allegations Satisfy Article III Standing

In order for an action to satisfy Article III's requirement of a "case or controversy," a plaintiff must establish standing by showing "(1) an injury in fact that (2) is fairly traceable to the challenged conduct and (3) has some likelihood of redressability." *Jewel v. Nat'l Sec. Agency*, 673 F.3d 902, 908 (9th Cir. 2011) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). At the pleading stage, "[g]eneral factual allegations of injury resulting from the defendant's conduct may suffice, as we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Id.* at 907 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)) (second alteration in original). If a plaintiff lacks standing under Article III,

4

federal courts lack jurisdiction to consider the plaintiff's claims. *See Defs. of Wildlife*, 504 U.S. at 559–61.

The dispute here relates to the "injury in fact" requirement, which the Supreme Court has described as the "'[f]irst and foremost' of standing's three elements." *Spokeo, Inc. v. Robbins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 103 (1998)) (alteration in original). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id*. at 1548 (quoting *Defs. of Wildlife*, 504 U.S. at 560).

In *Spokeo*, the Court emphasized that concreteness and particularization are separate requirements. "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id*. (quoting *Defs. of Wildlife*, 504 U.S. at 560 n.1). Even where this requirement is met, however, the injury-in-fact requirement will not be satisfied unless the injury is also concrete. *Id*. "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Id*. (citing Black's Law Dictionary 479 (9th ed. 2009)). An injury may be "concrete" even if it is intangible, and "in determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Id*. at 1549. With respect to history, "it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id*. (citing *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 775–77 (2000)).

The judgment of Congress is also "instructive and important" because "Congress is well positioned to identify intangible harms that meet minimum Article III requirements." *Id*. Thus, "Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." *Id*. (quoting *Lujan*, 504 U.S. at 580 (Kennedy, J., concurring)). Nonetheless, "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id*. at 1549. Thus, while a procedural violation "can be sufficient in some circumstances to

constitute injury in fact," for example, where there is a "risk of real harm," a "*bare* procedural violation, divorced from any concrete harm" does not "satisfy the injury-in-fact requirement of Article III." *Id.* (emphasis added).

In *Syed v. M-I, LLC*, the Ninth Circuit applied the test for standing set forth in *Spokeo* to a claim under the FCRA. *Syed v. M-I, LLC*, 853 F.3d 492, 499–500 (9th Cir.), *cert. denied*, 138 S. Ct. 447 (2017). The plaintiff in that case, Sarmad Syed, alleged that his employer violated the FCRA by including a liability waiver in the same form as the disclosure and authorization for the employer to procure consumer reports. *Id.* at 497–98. He also alleged "that he 'discovered [his employer's] violation(s) within the last two years when he obtained and reviewed his personnel file from [the employer] and discovered that [the employer] had procured and/or caused to be procured a "consumer report" regarding him for employment purposes based on the illegal disclosure and authorization form.'" *Id.* at 499 (quoting Syed's complaint). The Ninth Circuit held Syed alleged "more than a 'bare procedural violation'" because the "disclosure requirement at issue, 15 U.S.C. § 1681b(b)(2)(A)(i), creates a right to information by requiring prospective employers to inform job applicants that they intend to procure their consumer reports," and the "authorization requirement, § 1681b(b)(2)(A)(ii), creates a right to privacy by enabling applicants to withhold permission to obtain the report from the prospective employer, and a concrete injury when applicants are deprived of their ability to meaningfully authorize the credit check." *Id.* at 499. The Ninth Circuit also held that the allegation quoted above regarding Syed's "discover[y]" of the alleged violation was "sufficient to infer that Syed was deprived of [those rights] because it indicates that Syed was not aware that he was signing a waiver authorizing the credit check when he signed it," and that the court could "fairly infer that Syed was confused by the inclusion of the liability waiver with the disclosure and would not have signed it had it contained a sufficiently clear disclosure, as required in the statute." *Id.* at 499–500.

There is no indication that the complaint in *Syed* included any more specific allegation of concrete or particularized injury than Brown's allegation here that he "was confused by [Core-Mark's] standard disclosure form and did not understand that [Core-Mark] would be requesting a 'consumer report' as defined in the FCRA," and that Core-Mark in fact "secured a consumer

6

report." *See* Compl. ¶ 17; *see also id.* ¶ 32 (alleging that Brown "did not give valid authorization for [Core-Mark] to procure a consumer report").[3] Core-Mark does not argue that Brown's allegation of the *effects* he experienced—confusion regarding the nature of the disclosure and a consumer report obtained without valid authorization—is distinguishable from the allegations in *Syed*.

Instead, Core-Mark contends that "*Syed* is inapplicable here because the Disclosure form at issue in this case is clear," and "[i]t is only when a disclosure form does not comply with the FCRA's 'clear and conspicuous' requirements that the right to privacy may be infringed, in which case a 'concrete injury' and Article III standing would exist." Reply at 9; *see* Mot. at 12–17. Whether Core-Mark's disclosure was "clear" within the meaning of the FCRA is the core issue in dispute for the merits of Brown's claims. As the Supreme Court has stated, "standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal." *Warth v. Seldin*, 422 U.S. 490, 500 (1975) (citing *Flast v. Cohen*, 392 U.S. 83, 99 (1968)); *see also Flast*, 392 U.S. at 99 ("The fundamental aspect of standing is that it focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated."). Under *Syed*, a plaintiff who is confused by a disclosure form, does not understand that he is authorizing his employer to obtain a consumer report, and nevertheless has such a report procured suffers a concrete injury to the plaintiff's rights to information and privacy sufficient to establish Article III standing. The allegations here meet that standard. Brown therefore has standing to bring his claims, and the Court has subject matter jurisdiction to consider them.

*Lee v. Hertz Corporation*, the only case that Core-Mark cites dismissing an FCRA claim for lack of standing, predated *Syed* and is distinguishable from the facts at hand. *See Lee*, No. 15-cv-04562-BLF, 2016 WL 7034060 (N.D. Cal. Dec. 2, 2016). There, the plaintiffs did "not allege that the disclosures they received prevented them from understanding that they were authorizing

---

[3] Based on the complaint's citation of *Gilberg* and Brown's arguments on the present motion, the Court infers that Brown is alleging he was confused by the use of "however" in the language of the disclosure. Although, as discussed below, the Court holds as a matter of law that the use of "however" does not render the disclosure unclear, Brown's allegation that he was confused by it is nevertheless taken as true, and is sufficient to establish standing for him to present such an argument.

7

Hertz to procure a background report." *Id.* at *5. Brown alleges here that he "was confused by the standard disclosure form and did not understand that [Core-Mark] would be requesting a 'consumer report' as defined in the FCRA." FAC ¶ 17. On the issue of standing, this case is therefore analogous to *Syed*, not *Lee*. Core-Mark's motion to dismiss under Rule 12(b)(1) is DENIED.

### B. Motion for Judgment on the Pleadings Under Rule 12(c)

#### 1. Legal Standard

Rule 12(c) of the Federal Rules of Civil Procedure permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). "Analysis under Rule 12(c) is substantially identical to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (citation and internal quotation marks omitted).[4] Generally, a plaintiff's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that "[a] pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). In ruling on a motion under Rule 12(c), the Court must accept all factual allegations in the complaint as true and view them in the light most favorable to the non-moving party. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

Dismissal at the pleading stage may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory."

---

[4] In the final substantive paragraph of both its motion and its reply, Core-Mark argues briefly that it is also entitled to dismissal under Rule 12(b)(6) because the standards under Rule 12(b)(6) and Rule 12(c) are functionally identical. Mot. at 17; Reply at 10. That argument is frivolous: a motion under Rule 12(b)(6) must be brought before the defendant files an answer, *see* Fed. R. Civ. P. 12(b) (text following subpart (b)(7)), and Core-Mark answered Brown's complaint before it filed its present motion, albeit by only three minutes, *see* Answer (dkt. 27). Because the standards are the same, however, the distinction between Rule 12(c) and Rule 12(b)(6) is not material to the outcome.

8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Rather, the claim must be "'plausible on its face,'" meaning that the plaintiff must plead sufficient factual allegations to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

### 2. Brown Has Not Stated a Cognizable Claim

The FCRA prohibits an employer from obtaining a consumer report unless:

> (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and
>
> (ii) the consumer [i.e., the employee or job applicant] has authorized in writing (which authorization may be made on the document referred to in clause (i) ) the procurement of the report by [the employer].

15 U.S.C. § 1681b(2)(A). Core-Mark argues that the Court should determine as a matter of law from the face of the disclosure Brown signed that it is "clear and conspicuous," and that Brown's authorization for Core-Mark to obtain reports was therefore valid. Brown contends that the disclosure was not "clear."

In evaluating whether a disclosure is "clear and conspicuous," courts "'draw upon the wealth of [Uniform Commercial Code (UCC)] and [Truth in Lending Act (TILA)] case law'" addressing those terms. *Gilberg v. Cal. Check Cashing Stores, LLC*, 913 F.3d 1169, 1176 (9th Cir. 2019) (quoting *Cole v. U.S. Capital*, 389 F.3d 719, 730 (7th Cir. 2004)). The Ninth Circuit "adopt[s] [its] 'clear and conspicuous' analysis from *Rubio v. Capital One Bank*, 613 F.3d 1195 (9th Cir. 2010), a TILA disclosure case." *Id.* In *Gilberg*, the Ninth Circuit assumed without deciding "that clarity and conspicuousness under FCRA present questions of law rather than fact" where no party argued to the contrary. *Id.* at 1177. As neither party here argues that clarity is a question of fact, the Court assumes for the purpose of this order that it is a question of law.

9

Even where "clarity and conspicuousness is a question of law, . . . empirical evidence is helpful in determining what a reasonable consumer will understand and readily notice." *Rubio*, 613 F.3d at 1200. In *Rubio*, the Ninth Circuit relied on "evidence on how a reasonable consumer will understand the term 'fixed rate' . . . available from the Federal Reserve Board of Governors, the very agency tasked with implementing TILA." *Id.* Because that evidence showed that "reasonable consumers [could] interpret [the] ambiguous disclosure [at issue] in more than one way," the *Rubio* court reversed dismissal of plaintiff's TILA claim. *Id.* at 1202. Although the Ninth Circuit declined to remand for further factual development, its decision not to do so was based the rule that "TILA is liberally construed in favor of the consumer and strictly enforced against the creditor," and thus that "any misleading ambiguity—any disclosure that a reasonable person could read to mean something that is not accurate—should be resolved in favor of the consumer.'" *Id.* The court did not suggest, as it certainly could have in that context, that factual development would never be appropriate on the issue of whether a disclosure is sufficiently clear. This Court understands that portion of the decision as indicating both: (1) that a court may, in appropriate circumstances, reach a determination based on the language of a disclosure in itself; and (2) that in other circumstances, factual development may be appropriate.

The relevant portion of the FCRA disclosure at issue in *Gilberg*, which the Ninth Circuit held to be unclear, read as follows:

> The scope of this notice and authorization is all-encompassing; however, allowing CheckSmart Financial, LLC to obtain from any outside organization all manner of consumer reports and investigative consumer reports now and, if you are hired, throughout the course of your employment to the extent permitted by law.

*Gilberg*, 913 F.3d at 1177. Core-Mark's disclosure here includes similar language:

> The scope of this disclosure is all-encompassing, however, allowing the Company to obtain from any outside organization all manner of consumer reports throughout the course of your employment to the extent permitted by law.

FAC Ex. 1

The Ninth Circuit focused on the semicolon before the word "however":

> The beginning of this sentence does not explain how the authorization is all-encompassing and how that would affect an applicant's rights.

10

> The second half of the sentence, following the semicolon, lacks a subject and is incomplete. It suggests that there may be some limits on the all-encompassing nature of the authorization, but it does not identify what those limits might be.

*Gilberg*, 913 F.3d at 1177. The Ninth Circuit therefore reversed the district court's grant of summary judgment for the defendant, and held instead that "the disclosure form contains language that a reasonable person would not understand. *Id.*

Here, Core-Mark's disclosure includes a comma instead of the semicolon in *Gilberg*, which resolves the grammatical error in that case. The latter portion of the sentence, rather than being a defective independent clause with no subject, is a participial phrase explaining how the scope is all-encompassing: it is not limited to the examples that Core-Mark provided of the most common reports obtained, but may instead encompass "all manner of consumer reports throughout the course of your employment to the extent permitted by law." *See* FAC Ex. 1. In this context, the word "however" no longer suggests some limit to the "all-encompassing" authorization, but instead is more naturally read as highlighting the contrast between the limited examples of the *most common* reports as compared to the larger scope of *authorized* reports. While replacing a semicolon with a comma may be a minor change from a typographical standpoint, the semicolon was the primary reason for the Ninth Circuit's objection to the clarity of the sentence, and is not an issue in this case. *Gilberg* therefore does not require the conclusion that Core-Mark's disclosure was not "clear."

When asked at the hearing how the word "however" could induce confusion as it is used in Core-Mark's disclosure, Brown's attorney's answer was not persuasive, and mere reference to *Gilberg* does not explain how the disclosure here could be unclear when the grammatical error identified in that case has been resolved. The similarity to *Gilberg* is the only basis for a lack of clarity identified in Brown's complaint, and Brown's claims are therefore DISMISSED for failure to state a claim on which relief can be granted.

It is conceivable, however, that the disclosure could be unclear for other reasons. If Brown believes that some other aspect of the disclosure was not "clear" within the meaning of the FCRA, he may amend his complaint to present such a theory. In order to have standing to pursue a claim based on a different reason the disclosure was unclear, Brown must have actually been confused

11

by the purported lack of clarity underlying his claim and must so allege, and any such amendment must, of course, have a sufficient basis in fact to comply with Rule 11 of the Federal Rules of Civil Procedure.

## IV. CONCLUSION

For the reasons discussed above, Core-Mark's motion to dismiss for lack of jurisdiction is DENIED, but its motion for judgment on the pleadings is GRANTED on the basis that Brown has not plausibly alleged that Core-Mark's disclosure was "unclear" merely on account of its similarity to the disclosure in *Gilberg*. Brown's claims are DISMISSED with leave to amend. If Brown was in fact confused by some other aspect of the disclosure and can amend his complaint to cure the deficiencies identified above, he may file an amended complaint no later than May 24, 2019.

**IT IS SO ORDERED.**

Dated: May 10, 2019

JOSEPH C. SPERO
Chief Magistrate Judge